THE HON. RONALD LEIGHTON

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DINO CONSTANCE, | ) CAUSE NO. C15-5426 RBL |
| Petitioner, | ) PRELIMINARY OBJECTIONS TO REPORT |
| v. | ) AND RECOMMENDATION |
| DONALD HOLBROOK, | ) NOTED FOR CONSIDERATION |
| Respondent. | ) April 1, 2016 (to be continued to 4/29/16) |
| | ) ***ORAL ARGUMENT REQUESTED*** |

COMES NOW Dino Constance, the petitioner, by and through his attorney, Neil M. Fox, and submits these preliminary objections to the Report and Recommendation ("R & R") issued on February 29, 2016. Dkt. No. 57.

**1.    *Preliminary Nature of These Objections***

Mr. Constance filed the petition in this matter *pro se*. Magistrate Judge Strombom issued her R & R, Dkt. No. 57, on February 29, 2016. On March 9, 2016, the undersigned counsel appeared on behalf of Mr. Constance. Counsel for the Respondent agreed to the entry of a stipulated order extending the time to file objections to the R & R until April 22, 2016, and the undersigned counsel immediately filed the stipulated continuance request. Dkt. No. 59. *See* LCR 72 ("A party must file and serve any objections to a magistrate judge's recommended disposition within 14 days after being served *unless the court enlarges the time period in a specific case*.") (emphasis added).

PRELIMINARY OBJECTIONS TO
REPORT AND RECOMMENDATION - Page 1
*Constance v. Holbrook*, C15-5426 RBL

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**

Although the undersigned counsel represented Mr. Constance in portions of his state court post-conviction litigation, he withdrew from representing Mr. Constance around three years ago when another attorney, Mr. Connick, assumed representation of Mr. Constance in state court. While the undersigned counsel has some familiarity with the facts and the issues in this matter, he has not reviewed the state court record thoroughly in the past few years[1] and is now just becoming acquainted with the voluminous filings in this Court.

Although the parties reached a stipulation to extend the date for filing Mr. Constance's objections to the R & R, Dkt. No. 59, the Court has not yet signed an order extending the dates. Accordingly, so as not to waive any of Mr. Constance's rights, Mr. Constance is filing this *preliminary* set of objections to the R & R. This filing is intended to make it clear that Mr. Constance objects to the R & R in its entirety and all of its findings and conclusion. He is filing this pleading so that he is not prejudiced by the failure to file objections by the current March 14th deadline. This is a preliminary objection only. Mr. Constance hopes that the Court will grant the stipulated extension, and the undersigned counsel will then file a more complete set of objections by the agreed-upon date.

**2.    *Standard of Review***

This Court must afford *de novo* review when ruling on objections to the *R & R*. Fed. R. Civ. Proc. 72(b)(3); 28 U.S.C. § 636(b)(1)(c); *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**3.    *Lack of Full Record***

In *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Supreme Court made clear that the "backward-looking language" in § 2254(d) "requires an examination of the state-court decision at the time it was made." 563 U.S. at 182. Based on these concerns, the Court held that review under AEDPA "is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*. at 181. Recently, in an *en banc* opinion, the Ninth Circuit relied on this "backward-looking" feature of AEDPA to hold that "[f]ederal courts sitting in habeas may

---

[1]    While counsel has copies of many of the key documents and transcripts from state court, he has not reviewed in their entirety Dkt. No. 16 and Dkt. 34, and has asked Respondent's counsel if she could send him digital copies of the 70 exhibits.

PRELIMINARY OBJECTIONS TO
REPORT AND RECOMMENDATION - Page 2
*Constance v. Holbrook*, C15-5426 RBL

1   consider the entire state-court record, not merely those materials that were presented to state

2   appellate courts." *McDaniels v. Kirkland*, ___F.3d ___, 2015 U.S. App. LEXIS 22598, Slip Op.

3   at 20 (9th Cir. Dec. 24, 2015) (en banc).

4          In the instant case, it is apparent that the Respondent has not filed with this Court the full

5   record from Mr. Constance's state court proceedings.  There are thousands of pages of exhibits

6   and briefing from Clark County Superior Court that are not part of the 70 exhibits contained

7   within Dkt. No. 16 and Dkt. No. 34.  The full list of superior court briefs and exhibits is contained

8   in Dkt. No. 39 and were all designated to the Washington Court of Appeals. While Mr. Constance

9   has apparently filed some of these documents as exhibits to his *pro se* pleadings, the undersigned

10  counsel has not yet had the opportunity to review each and every pleading to see what is missing.

11         Perhaps Mr. Constance's prior *pro se* attempts to obtain a full record were inartful,

12  focusing attention on Habeas Rule 5's provisions about the Respondent providing transcripts and

13  briefing from the state appellate court.  However, as *McDaniels v. Kirkland*, *supra*, makes clear,

14  a federal court sitting in habeas needs to look at all pertinent documents that were before the state

15  trial court, and should not be restricted to appellate documents.  The federal court can order the

16  production of such documents, not under Habeas Rule 5, but rather under Habeas Rule 7's

17  provisions regarding expanding the record.

18         Here, in contrast to *McDaniels v. Kirkland*, *supra*, all of the state trial court documents

19  of interest here – the thousands of pages of exhibits, for instance – were actually before the

20  Washington Court of Appeals.  Dkt. No. 39.  It was therefore error for the Magistrate Judge not

21  to order the production of these documents under Rule 7 and then to consider them when deciding

22  this case.  This Court therefore should not fully consider the Magistrate's R & R until such time

23  as it has before it the full state court record.  *See McDaniels v. Kirkland*, *supra*.

24         While the undersigned counsel has not yet been able to review the record in this Court and

25  in the Washington courts thoroughly, it is clear that the documents admitted at Mr. Constance's

26  post-conviction hearing are critical.  Just by way of example, Mr. Constance points the Court to

27  the Magistrate Judge's treatment of the mental health history of the main informant in this case,

28  Ricci Castellanos.  The R & R concludes that because the mental health evaluations (that were

    either not disclosed by the State or not uncovered by defense counsel) did not show that Mr.

PRELIMINARY OBJECTIONS TO
REPORT AND RECOMMENDATION - Page 3
*Constance v. Holbrook*, C15-5426 RBL

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**

1   Castellanos was not competent, the state court did not err in determining that the information

2   would not have been admissible at trial.  Dkt. No. 57 at 24.

3       But an examination of Mr. Castellanos' mental health history, through documents

4   admitted in the state trial court post-conviction proceedings, reveals the depths of his

5   hallucinations and homicidal ideation.  Clark County Superior Court Exs. 113 & 114 (admitted

6   at RP (2/23-24/12) at 927-28, 934)[2] (portions attached in App. A to this memo).[3]  A person who

7   hallucinates about killing others and believes that he is a serial killer could easily misconstrue

8   comments made by Mr. Constance in the wrong way, and the Sixth Amendment would certainly

9   allow for cross-examination about such delusional thinking.  *See, e.g.*, *Browning v. Trammell*,

10  717 F.3d 1092 (10th Cir. 2013); *Greene v. Wainwright*, 634 F.2d 272 (5th Cir. 1981).

11      Similarly, while one might conclude, without looking at the documents themselves, that

12  the State's failure to disclose that Mr. Castellanos was a suspect in the theft of high-end musical

13  instruments was not a *Brady*[4] violation because Mr. Castellanos later claimed he "did not know"

14  he was a suspect, Dkt. No. 57 at 21, 38, a review of the theft report filed in the state trial court[5]

15  would show it that Mr. Castellanos would have known that he was under investigation since the

16  police were interrogating his associates and coming to the apartment where he was staying, asking

17  questions.  *See also* RP (2/28/12) at 1039 ("Q. And do you remember talking to the police about

18  the violins? A. Vaguely.").  Certainly, it would have been appropriate to have cross-examined Mr.

19  Castellanos about his awareness of the pending charges.  *See Davis v. Alaska*, 415 U.S. 308

20  (1974).

21      There are many other instances where the lack of the full record interfered with the

22  Magistrate Judge's treatment of Mr. Constance's claims.  Ultimately, Mr. Constance will be filing

23

24      [2]    As counsel has not yet obtained a copy of the record portions that the Respondent has filed, Dkt.
        Nos. 16 & 34, he is unclear which exhibit contains which volume of transcripts.

25

26      [3]    These copies, of course, are from counsel's files, and were not taken the state court's files.  Counsel
        cannot recall if the entire WSH report was admitted and will file the admitted portions when he obtains a copy from
        prior counsel.

27

28      [4]    *Brady v. Maryland*, 373 U.S. 83 (1963).

        [5]    Ex. 27 (admitted RP (2/23-24/12) at 822) (portion attached in App. B, along with portions of Ex.
        19 and 22 (admitted RP (4/28/11) 320, 335) which are Det. O'Mara's emails to prosecutor's office about burglary).

PRELIMINARY OBJECTIONS TO
REPORT AND RECOMMENDATION - Page 4
*Constance v. Holbrook*, C15-5426 RBL

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**

1   a separate motion under Habeas Rule 7 so that the full state court record is before the Court

2   before it finally decides this matter.  But, it was error for the Magistrate Judge not to consider all

3   documents admitted in the state court proceedings. *McDaniels v. Kirkland*, *supra*.  Mr. Constance

4   objects to the R & R on this basis.

5   **4.   *Failure to Consider the Cumulative Effect of the Brady and Strickland[6]***

   **  *Violations and Mistaken Application of a Sufficiency of the Evidence***

6   **  *Test – Claims 2, 10 & 12***

7       There is no doubt that either the State withheld or defense counsel failed to investigate and

8   uncover significant information which casts grave doubt on the credibility and biases of the main

9   witnesses against Mr. Constance – Ricci Castellanos, Zachary Brown, Michael Spry and Jordan

10  Spry and the main investigating police officer (John O'Mara).[7]  There was extensive evidence

11  introduced in the post-conviction proceedings that the witnesses, variously, were the subject of

12  investigations for criminal acts ranging from theft to tampering with witnesses, had arrest

13  warrants outstanding, given preferential treatment about pending cases, had biases against Mr.

14  Constance, suffered from mental illness, or (in the case of Det. John O'Mara) had been the

15  subject of internal investigations for unprofessional conduct).

16      The Magistrate Judge rejected Mr. Constance's claims under *Brady* and *Strickland*,

17  finding that the state court's application of these cases was not unreasonable.  Dkt. 57 at 15-25,

18  35-40.  This conclusion, however, is erroneous.  Both the R & R and the Washington Court of

19  Appeals' decision were contrary to or were an objectively unreasonable application of clearly

20  established federal law, as determined by the Supreme Court, and involved objectively

21  unreasonable application of the facts in light of the evidence.  28 U.S.C. § 2254(d).

22      The Washington Court of Appeals rejected many of Mr. Constance's claims, finding that

23  various categories of impeachment evidence would not have been admissible at trial.  Dkt. 16,

24

25      [6]      *Strickland v. Washington*, 466 U.S. 668 (1984).

26

27      [7]      Whether the information was not disclosed by the State (a Fourteenth Amendment violation) or
    whether it was not uncovered by the defense (a Sixth Amendment violation) is irrelevant.  Both constitutional
    violations led to a restriction on Mr. Constance's ability to cross-examine effectively at trial (a Sixth Amendment
28  violation).  The test for prejudice under *Strickland* is identical to the test for materiality under *Brady*. *See Kyles*, 514
    U.S. 419, 434 (1995) (adopting *Strickland* standard in *Brady* context).  Thus, Mr. Constance will combine his
    objections to the R & R as it relates to both Claim 2 (*Brady*) and Claim 10 (ineffective assistance of counsel).

PRELIMINARY OBJECTIONS TO
REPORT AND RECOMMENDATION - Page 5
*Constance v. Holbrook*, C15-5426 RBL

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**

1   Ex. 47 at 25-30, 40-47.  However, a witness' criminal history, pending arrest warrants, mental

2   health problems, unfiled criminal charges, preferential treatment by the prosecutors, attempts to

3   interfere with the justice system, internal affairs' investigations and the like are all highly relevant

4   and need to be disclosed (or uncovered by the defense), so that they could have been used in

5   cross-examination under the Sixth Amendment. *See Milke v. Ryan*, 711 F.3d 998 (9th Cir. 2013);

6   *United States v. Kohring*, 637 F.3d 895 (9th Cir. 2011); *United States v. Price*, 566 F.3d 900 (9th

7   Cir. 2009); *Benn v. Lambert*, 283 F.3d 1040 (9th Cir. 2002).  In the full objections to the R & R

8   that will be filed later, the undersigned counsel will detail how each category of evidence that was

9   uncovered in the post-conviction proceedings was directly relevant to the witnesses' lack of

10   credibility and bias and could have been used for impeachment at trial.

11        Moreover, both the Magistrate Judge and the Washington Court of Appeals rejected Mr.

12   Constance's claims one-by-one, addressing each failure to disclose or failure to investigate claim

13   separately.[8]  Neither the Court of Appeals nor the Magistrate Judge followed the U.S. Supreme

14   Court's requirements to consider the "cumulative effect" of the suppressed evidence.  *Kyles v.*

15   *Whitley*, 514 U.S. 419, 421, 437 & n.10, 441 (1995). The importance of evaluating the cumulative

16   effect of suppressed evidence was underlined just recently in a *per curiam* decision by the U.S.

17   Supreme Court, *Wearry v. Cain*, 577 U.S. ___, 2016 U.S. Lexis 1654, No. 14-10008 (March 7,

18   2016), a case where the Court criticized the Louisiana state post-conviction court because it

19   "improperly evaluated the materiality of each piece of evidence in isolation rather than

20   cumulatively, *see Kyles v. Whitley*, 514 U. S. 419, 441 (1995) (requiring a 'cumulative evaluation'

21   of the materiality of wrongfully withheld evidence")". *Wearry v. Cain*, Slip Op. at 9.

22        Here, when one views the quality and quantity of the information that was either withheld

23   by the State or not discovered by defense counsel and then one views the information

24   cumulatively, one cannot have confidence in the verdict in Mr. Constance's case.  *See Wearry*

25   *v. Cain*, Slip Op. at 7 ("Wearry need not show that he 'more likely than not' would have been

26

27

28

---

[8]      The R & R's rejection of the cumulative error claim, Dkt. No. 57 at 45-46, is therefore erroneous as well. *Brady* and *Strickland* both require such a cumulative analysis.

PRELIMINARY OBJECTIONS TO
REPORT AND RECOMMENDATION - Page 6
*Constance v. Holbrook*, C15-5426 RBL

**Law Office of Neil Fox, PLLC
2125 Western Ave., Suite 330
Seattle, Washington 98121
206-728-5440**

acquitted had the new evidence been admitted. . . . He must show only that the new evidence is sufficient to 'undermine confidence' in the verdict.").

In this analysis, it is improper to apply what amounts to a "sufficiency of the evidence" test, as both the Washington Court of Appeals and the Magistrate Judge did here. Dkt. No. 57 at 24 (quoting Dkt. No. 16, Ex. 47 at 19) (detailing taped conversation between Castellanos and Constance). This is wrong because the inquiry for both *Brady* and *Strickland* is not whether there was sufficient evidence to sustain a conviction independent of the violations. As the Ninth Circuit held (when upholding this Court's granting of habeas relief to another Washington State prisoner):

> The Washington Supreme Court in essence converted *Strickland*'s prejudice inquiry into a sufficiency-of-the evidence question. . . . By reducing the question to sufficiency of the evidence, the Washington Supreme Court has focused on the wrong question here—one that has nothing to do with *Strickland*. . . . . This approach to *Strickland* is not merely wrong, but "objectively unreasonable" under AEDPA.

*Crace v. Herzog*, 798 F.3d 840, 849-50 (9th Cir. 2015).

Rather, the proper inquiry, not relied upon by either the Court of Appeals or the Magistrate Judge, is at least whether "a single juror" would have had a reason to doubt the State's evidence:

> If even a single juror had found Saldate [the detective] untrustworthy based on the documentation that he habitually lied under oath or that he took advantage of women he had in his power, there would have been at least a hung jury.

*Milke*, 711 F.3d at 1019. Indeed, in *Wearry*, the Court held that the "undermine confidence" standard was such that "*Wearry can prevail even* if, as the dissent suggests, *the undisclosed information may not have affected the jury's verdict*." *Wearry v. Cain*, Slip Op. at 7 n. 6 (emphasis added).

Here, by focusing on the one recording from an intercept (that itself was ambiguous and depended upon the credibility of Mr. Castellanos to explain what the tape "meant" by reference to his description of other (untaped) conversations) both the R & R and the Washington Court of Appeals' decision improperly focused on the supposed strength of other evidence and did not apply the proper test as set out by the Supreme Court in *Kyles*, *Strickland* and *Wearry* and as by the Ninth Circuit in *Crace* and *Milke*. A proper application of the applicable tests under the Sixth

PRELIMINARY OBJECTIONS TO
REPORT AND RECOMMENDATION - Page 7
*Constance v. Holbrook*, C15-5426 RBL

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**

1  and Fourteenth Amendments requires granting relief.  The Court should therefore reject the R &

2  R and grant relief under *Brady* and *Strickland*.

3       **5.**   *Reversal of Count IV Should Lead to Relief on all Counts - Claim 1*

4       The State withheld evidence that Zachary Brown, the witness for Count IV, wanted a

5  benefit in exchange for his testimony against Mr. Constance – the dropping of a no-contact order.

6  *See* RP (4/28/11) ("I was just thinking, if I scratch his back, he'll [Det. O'Mara] scratch my

7  back.").  Based upon this *Brady* violation, the state post-conviction court vacated the conviction

8  from Count IV.  Nonetheless, the Magistrate Judge concluded that the Washington Court of

9  Appeals did not improperly conclude this constitutional violation had no "spill over" effect onto

10  the other counts.  Dkt. No. 57 at 13-15.  This was error.

11       Initially, the R & R's appears to be based on the analysis about whether improper joinder

12  of *defendants* violates the Constitution.  Dkt. No. 57 at 14 & n. 1 (citing co-defendant joinder

13  cases such as *United States v. Lane*, 474 U.S. 438 (1986) and *Collins v. Runnels*, 603 F.3d 1127

14  (9th Cir. 2010)).  Of course, the main issue here has nothing to do with joinder of defendants.  In

15  fact, the issue at this point is not really whether the four counts against Mr. Constance should

16  have been tried together at all.  Rather, the issue is whether, given the prejudicial *Brady* violations

17  regarding Mr. Brown, the convictions in Counts I-III were also tainted..

18       The Washington Court of Appeals rejected this argument, simply concluding:

19       But Brown's testimony is relevant only to Count IV, criminal solicitation for
     assault, which accused Constance of soliciting Brown to assault Koncos, not

20       Count' s I, II, or III, which accused Constance of soliciting people other than
     Brown to murder Koncos. And while the State argued that Brown' s testimony

21       gave credence to Michael' s, Jordan' s, and Castellanos' s testimonies, the State
     also argued that Michael' s, Jordan' s, and Castellanos' s testimonies bolstered each

22       other. Furthermore, the jury heard an intercept of Constance' s conversation with
     Castellanos in which Constance planned the details of Koncos' s murder. Finally,

23       the jury was instructed to treat each count separately, and we presume the jury
     followed this instruction. *See State v. Perez- Valdez*, 172 Wn.2d 808, 818-19, 265

24       P.3d 853 ( 2011). Thus, the suppression of impeachment information against
     Brown does not create a reasonable probability that the results on Counts I, II, or

25       III would have differed.

26  Dkt. No. 16, Ex. 47 at 32.

27       This conclusion is contrary to or involves an unreasonable application of clearly

28  established federal law in that it failed to apply the proper tests, set out above, under *Wearry*,

     *Kyles*, *Milke* and *Crace*, and appears to rest on the prohibited "sufficiency of evidence" analysis.

PRELIMINARY OBJECTIONS TO
REPORT AND RECOMMENDATION - Page 8
*Constance v. Holbrook*, C15-5426 RBL

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**

The decision was also "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2), because the jury instruction referred to by the Court of Appeals did not instruct the jury to consider each count in a vacuum and did not tell the jurors not to consider the evidence admitted as part of one count when considering the other counts. Instruction No. 3, App. C.[9]  In fact, the jury was instructed that:

> It is your duty to decide the facts in this case based upon the evidence presented to you during this trial . . . .The evidence that you are to consider during your deliberations consists of the testimony that you have heard from witnesses, stipulations, and the exhibits that I have admitted, during the trial . . . . In order to decide whether any proposition has been proved, you must consider all of the evidence that I have admitted that relates to the proposition.

Instruction No. 1, App. C. Thus, the jurors were told that they could, in fact, consider evidence about Zachary Brown when determining whether Mr. Constance was guilty in Counts I, II and III.  Given the prosecutor's argument that Mr. Brown's claims gave credence to Castellanos and the Sprys, Dkt. No . 57 at 13-14, the Court of Appeals' conclusion that there was no "spill-over" effect of the *Brady* violation in Count IV to Counts I-III is unreasonable.  The issue is not whether the jurors were told to decide each count separately, but whether one juror would have had a reason to doubt Castellanos and the Sprys if Brown's credibility had been successfully attacked. The issue is not even whether the evidence of the deal with Brown would have affected the jury's verdict on Counts I-III – rather the issue is whether the failure to disclose Brown's deal undermined confidence in the verdict for the other counts. *Wearry v. Cain*, *supra*.  Given how the counts were joined for trial, and how the State argued the matter, the Court of Appeals' decision was contrary to or involved an unreasonable application of settled law. The Court should reject the R & R and grant relief.

### 6.  *True Threat – Claim 3*

Mr. Constance objects to the Magistrate Judge's R & R regarding the lack of a "true threat" instruction.  Dkt. No. 57 at 25-27.  Washington's criminal solicitation statute, RCW 9A.28.030, does require the intent to facilitate or promote the commission of a crime. But, the

---

[9]     Because the Respondent has not filed the full state court proceedings, it is not clear whether the jury instructions from the trial are in the record at this point in this proceeding. Selected instructions are in App. C.

1   First and Fourteenth Amendments requires more -- that a reasonable person would foresee that

2   the statement  be interpreted as a serious expression of intention to inflict bodily harm upon or

3   to take the life of another individual.  *See Virginia v. Black*, 538 U.S. 343, 359 (2003).  The issue

4   is not the intent of the defendant – "The speaker need not actually intend to carry out the threat.

5   Rather, a prohibition on true threats 'protects individuals from the fear of violence' and 'from the

6   disruption that fear engenders.'" *Virginia v. Black*, 538 U.S. at 359-60.  Here, whether or not Mr.

7   Constance intended to commit a crime, the focus, under the First and Fourteenth Amendments,

8   needs to be on the response of the listener.  Given the testimony that people believed Mr.

9   Constance was just joking or "blowing off steam," RP (2/26/08) 370, 418; RP (2/27/08) 596, the

10  exclusion of a "true threat" requirement from the jury instructions is a constitutional violation.

11      The Court of Appeals' decision therefore resulted in a decision "that was contrary to, or

12  involved an unreasonable application of, clearly established Federal law, as determined by the

13  Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The Court should grant relief.[10]

14      **7.    *Violation of <u>Franks v. Delaware</u> – Claim <u>4</u>***

15      The Magistrate Judge rejected Mr. Constance's arguments that the police violated *Franks*

16  *v. Delaware*, 438 U.S. 154 (1978), when they excluded key points from the intercept applications.

17  The Magistrate Judge concluded that *Stone v. Powell*, 428 U.S. 465 (1976), barred the claim.

18  Dkt. No. 57 at 27-28.  But the main issue is one of effective assistance of counsel under the Sixth

19  and Fourteenth Amendments and the failure of trial counsel to litigate this issue.  The Magistrate

20  Judge also rejected this argument, Dkt. No. 57 at 41-43, upholding the Court of Appeals' decision

21  that the inclusion of all pertinent information in the intercept affidavits and the exclusion of the

22  false information would not have had an effect on the determination of probable cause.  Dkt. No.

23  57 at 42-43.

24      With all due respect, the Magistrate Judge's deference to the Court of Appeals' decision

25  is wrong.  If the police involved had not misrepresented Mr. Constance as a hardened criminal,

26  if they had disclosed that Ms. Koncos was the aggressor toward him on many occasions and that

27

28          [10]       Because of the necessity of a "true threats" instruction, Mr. Constance objects to the R & R's conclusion that trial counsel was not ineffective for failing to ask for such an instruction or failing to except to the lack of one. Dkt. No. 57 at 43-44.

PRELIMINARY OBJECTIONS TO
REPORT AND RECOMMENDATION - Page 10
*Constance v. Holbrook*, C15-5426 RBL

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**

1   even Jordan Spry vouched for Mr. Constance's presence when Koncos claimed he was violating

2   the no contact order, or if the police had disclosed known information about Castellanos and the

3   Sprys that would have shown their lack of credibility, a neutral magistrate would not have found

4   probable cause.  This Court should grant relief on this ground.

**8.**   *Spying on the Attorney-Client Relationship – Claim 6*

6       The State placed a wired informant in the cell next to Mr. Constance, who then listened

7   in and recorded Mr. Constance talking to his attorney. In the state post-conviction proceedings,

8   Mr. Constance argued that the State's conduct constituted a "free standing" Sixth and Fourteenth

9   Amendment violation in addition to constituting ineffective assistance of counsel when his

10   attorney at trial failed to move for dismissal of the charges on this basis.  The Magistrate Judge

11   rejected this argument, concluding that the issue was only a state law issue, not cognizable in

12   habeas.  Dkt. No. 57 at 31-32.

13       Mr. Constance objects to this conclusion. The Sixth Amendment does in fact ban

14   eavesdropping on attorney-client conversations, because such spying circumvents the adversarial

15   process. *United States v. Perry*, 875 F.2d 1346, 1349 (9th Cir. 1988); *United States v. Danielson*,

16   325 F.3d 1054, 1066-74 (9th Cir. 2003).  Such spying also, at the time of Mr. Constance's trial,

17   would have been the basis for automatic dismissal had a motion been filed.  *State v. Cory*, 62

18   Wn.2d 371, 374, 382 P.2d 1019 (1963); *State v. Perrow*. 156 Wn. App. 322, 231 P.3d 853

19   (2010); *State v. Granacki*, 90 Wn. App. 598, 959 P.2d 667 (1998).[11]

20       Accordingly, there was a Sixth Amendment violation, and trial counsel was ineffective

21   under the Sixth Amendment for not filing a motion to dismiss based on this violation.  The Court

22   should grant relief.

**9.**   *Double Jeopardy – Claim 7*

24       Mr. Constance argued that the convictions for Counts I and II, with consecutive sentences

25   violated the double jeopardy provisions of the Fifth Amendment.  The Magistrate Judge rejected

26   this argument, looking to the state court conclusions that the solicitations of Jordan and Michael

---

[11]   In 2014, the Washington Supreme Court held that prejudice does not have to be presumed (i.e. eavesdropping after a trial). *State v. Pena Fuentes*, 179 Wn.2d 808, 318 P.3d 257 (2014).  This would not have impacted the pre-trial spying that took place here.

PRELIMINARY OBJECTIONS TO
REPORT AND RECOMMENDATION - Page 11
*Constance v. Holbrook*, C15-5426 RBL

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**

Spry were separate. Dkt. No. 57 at 33-34. However, the Magistrate Judge failed to analyze the actual trial testimony, and relied simply on the legal conclusions of the state courts. Yet, the record indicates that Mr. Constance allegedly repeated his offer to Jordan and Michael Spry on a number of occasions, and allegedly discussed the matter in front of both individuals at the same time. RP (2/26/08) 443. There is only one unit of prosecution under Washington law and thus double jeopardy was violated. *See State v. Jensen*, 164 Wn.2d 943, 958, 195 P.3d 512 (2008). The Court should grant relief on this basis.

### 10.   *Other Objections*

Mr. Constance objects to the Magistrate Judge's R & R regarding (1) the knowing use of false or perjured testimony (Claim 5), Dkt. No. 57 at 28; (2) the discovery violations and lost evidence (Claims 8 & 11), Dkt. No. 57 at 44-45; and (3) trial counsel's ineffectiveness for not preparing Mr. Constance to testify at trial and all other inadequacies not covered above, (Claim 10), Dkt. No. 57 at 36-37. Additional briefing will be contained in the final set of objections.

### 11.   *The Court Should Grant a Certificate of Appealability*

A COA should issue if "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "The standard for granting a COA is 'relatively low.'" *Beardslee v. Brown*, 393 F.3d 899, 901 (9th Cir. 2004). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims" and "does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 336-37. Mr. Constance's is appropriate for a COA. The Magistrate Judge's recommendation here, Dkt. No. 57 at 46, is wrong and the Court should issue a COA on all issues.

### 12.   *Conclusion*

For the foregoing reasons and the reasons set out in all prior pleadings, the Court should reject the R & R and grant the writ.

DATED this 14th day of March 2016.

Respectfully submitted,
/s/   Neil M. Fox
Attorney for Petitioner

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**

1

CERTIFICATE OF SERVICE

2

 I hereby certify that on the 14th day of March 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to attorneys of record for Respondent and other parties

3

4

 I certify or declare under penalty of perjury that the foregoing is true and correct, this 14th day of March 2016 at Seattle WA.

5

6

/s/ NEIL M. FOX
Neil M. Fox, WSBA No. 15277
Attorney for Petitioner

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PRELIMINARY OBJECTIONS TO
REPORT AND RECOMMENDATION - Page 13
*Constance v. Holbrook*, C15-5426 RBL

**Law Office of Neil Fox, PLLC**
**2125 Western Ave., Suite 330**
**Seattle, Washington 98121**
**206-728-5440**

APPENDIX A

2023665

70.02

~~COMPLETE~~
NOV 0 9 2005

# SOCIAL SECURITY DISABILITY
## PSYCHIATRIC EVALUATION

**Ricci D. Castellanos**
SSN ▮▮▮▮▮

**Identifying Information:** Mr. Castellanos is a 45-year old Caucasian male who arrives on time for his 9/26/05 appointment.

**Chief Complaint:** When asked why he's applying for Social Security Disability and what prevents him from gainful employment he states, "My back."

I was asked to see the client regarding a history of depression.

**Present History:** Client states medically that he has back pain in specifically L2/L3 and L4/L5 regions where he's had herniated discs. He's apparently had two back surgeries, the first in July 2002 and the second in December 2004. He states that he now experiences constant and chronic back pain, radiating up into his right shoulder, mid low back and down into both buttocks. He'll also have a more shooting, intermittent pain that goes down into both right and left legs and at times will leave swelling and edema. He states that the pain is increased by stress and any type of increased activity or lifting. The pain is decreased by hot baths, stretching and sometimes walking. He is on no medications currently for pain and he denies taking over-the-counter pain medication. He also apparently has a long-standing history of hepatitis, specifically hepatitis C, now for 17 years. He currently takes a form of Interferon shots; Pegatron shots, once weekly and has been doing that since July 2005 and has to be on this for one year. He had been on Paxil previously, 30mg. He's not taken any now for one and a half months. He's also on a high blood pressure pill.

**Past Psychiatric History:** Client states that he's had problems with depression through much of his life. He had a severe bout after his first round of Interferon in 2000. He's had at least nine to ten psychiatric hospitalizations; one at Western State Hospital for homicidal ideation although he denies homicidal attempts. It was very difficult to gather adequate history from the gentleman. He started bragging and talking about being on 60 Minutes because his cell mate was the "Happy Face Killer". I could not gather exactly clearly what this has to do with his homicidal ideation. He however, has had multiple suicide attempts. He claims to have tried to hang himself and overdose numerous times. His last psychiatric hospitalization was about two years ago. He states that his first bout with psychiatric treatment was when he was in the seventh grade when he was constantly beating up people and having lots of anger. He had to be hospitalized at that time as a young child. He's been on multiple psychiatric medications over the years including Paxil, most recently. It is not clear why he stopped unless it was secondary to funds. In the past he's been on Seroquel, Prozac and Zoloft. He denies any use of mood stabilizers. He has had therapy in the past. All of this apparently through Columbia River Mental Health.

104

Page 2
9/26/05
Ricci Castellanos

**Police History:** Client has multiple histories of DWIs. He has a history of domestic violence, theft and receiving stone property. He has never spent prison time. He has spent quite a bit of jail time.

**Alcohol and Drug:** The client has a long standing history of alcohol and drugs. He started drinking when he was a child, pretty much heavily through then. "I can't afford to drink now. I would if I had the money, but I have no money. I had to move back to my parents 12 days ago." He states that he's clean and sober now for about two days. He had about two beers or more a few days ago. He used to drink daily for years, easily a fifth a day of rum and drank for eight to ten years at this level. Now, he states, he may have four or more Red Dogs a week. He's had at least seven different treatments and six DWIs. He's had seizures from withdrawals and definitely withdrawal symptoms and possible DTs. He denies ever having been fired from work secondary to his alcohol. He clearly has missed a lot of work because of it.

He's had a long standing history of drug use. He began sniffing gas when he was a nine year old boy. He's abused Oxycontin through January and February after his most recent surgery. He went to jail at that time and was detoxed in jail. He's had cocaine IV usage in the past and has been clean and sober now from drugs, except for the recent Oxycontin abuse, for about eight years.

**Background Psychosocial History:** Client grew up with his aunts and uncles. He was passed around his relatives and parents throughout his youth. He was the youngest of one brother, one half brother and a sister. He was in trouble from a very early age, constantly fighting in school. He went before a judge and was sent to a year of juvenile prison. He only finished through the eighth grade before dropping out. He never did get his GED. He has been married once and divorced. He was married for about seven years. He has six children ranging in ages 28 to 14. None of the kids are with him and he has no contact. These are by four different women and he has been declared a dead-beat dad and is apparently $110,000 in the hole of back support. He states that Washington has "fucked up laws" and he's very angry about the child support issues. At this point in the interview it became clear about what his homicidal ideation was about, stating at this point, "That's why I wanted to kill woman". His last job was hanging sheet rock. He states that he's been a construction worker in sheet rock for 23 years. His last work was in June 2001. He belongs to the carpenters union. "You know I would still work if it wasn't for my back. I always have worked." He states that he did not work long enough to be able to collect retirement and this is a sore point for him.

**Typical Day:** Currently the client is living with his parents in California. He had come up by bus just for this interview. He had to move back to live with them secondary to money issues here 12 days ago. He's currently living in the Sacramento area and in fact talked about his recent bus trip up. He had been living with friend prior, supporting himself mostly from Craig's List; getting free stuff and then selling. When I asked about

Page 3
9/26/05
Ricci Castellanos

his hobbies and pleasures he stated, "I like to tell people how I feel and how pissed off I am at the system." He denies that he's doing any chores at this time at his parent's house. He pretty much sleeps during the day. He is involved in the choir at their local church and enjoys that. He doesn't have any friends and isn't currently in a relationship at this time.

**Mental Status Examination:** Observation finds a gentleman with multiple tattoos across his arms, wearing tennis shoes, was unshaven, wearing a trucker's hat that says "Wrong Way" on it, sunglasses on top of his head and jeans. Marginal care for himself but it may have to do with the long bus ride. He is still bathing and caring for his ADLs adequately. Client was oriented to time, place and person. He was without tics, grimaces or tremors or obvious physical deformities. Client's affect was full range. His mood described over time as irritable and at times depressed, especially around his current life situation. Thought content showed no delusions, AV hallucinations, or history of same. There was no formal thought disorder. There is a long history of suicidal ideation and attempts though none current. There is a previous history of homicidal ideation though none currently and hospitalizations around this. Ability to abstract, calculate and remember found that the client could remember three out of three objects immediately and three out of three again at five minutes. He could state the presidents back through Bush Sr. He knew that we had recently had a hurricane in the New Orleans area. Client could spell the word "world" forward but was not able to spell it backwards. He found this quite difficult. He was able to do serial IIIs with some difficulty but did not make errors in doing it. He could maintain abstractive ability to similarity questions such as chair and a sofa and grape and a banana in an adequate manner. He was unable to do common metaphors. A subjective assessment of intelligence would be in the low-average to average range. Much of this may be due to his level of schooling.

**Summary:** Mr. Castellanos is a 45-year old Caucasian gentleman with a long history of multiple suicide attempts and psychiatric hospitalizations, all with what appears to be characterological wounding of a cluster B nature; most likely narcissistic and anti social wounding with impulsive activity and anger. He currently is not suicidal at this point in time. He is not currently homicidal. He is low on funds and had to move back in with his parents and is currently residing in the California area. He is not currently on medications. That may have to do with him recently moving to California. He is receiving treatment for his hepatitis C which was probably obtained with his long IV use of cocaine. He has a long standing history of both alcohol and drug dependence. He is currently still abusing alcohol after a long dependence history. At this point in time as the client states, he would still work if it wasn't for his physical issues, specifically his hepatitis and his chronic back problems which give him quite a bit of pain. Given his educational level if he was not able to do physical work he would not be able to work at all as his schooling level would prevent him even from simple cashier work. At this point in time psychologically his psychiatric problems are not preventing him from gainful employment. He has been able to work pretty continuously through the years even with the long-standing character disorder pathology he possesses. I'll defer to his



Page 4
9/26/05
Ricci Castellanos

physical physicians as to whether his current physical problems such as the hepatitis C and the herniated disc prevent him from gainful employment.

**Working Diagnosis:**

Axis I – Depressive disorder, NOS, possibly related to long-standing drug and alcohol history; rule out major depressive disorder; alcohol dependence/abuse, currently in an abuse pattern; cocaine dependence currently in sustained remission

Axis II – Cluster B personality disorder with narcissistic and antisocial features

Axis III – History of herniated disc with chronic pain; history of hepatitis C currently undergoing Interferon treatment; client could have some depressive issues related to the ongoing Interferon treatment which can be a significant and serious side effect

Axis IV – Psychosocial stressors marked by unemployment and poverty

Axis V – Current GAF – 60+, highest GAF in past year – 60+.

**Ability to Handle Funds:** Given the long standing drug and alcohol history, if granted Social Security Disability, the client would not retain the ability to handle his own funds.

George Mecouch, D.O.
Board Certified Psychiatry

107

APPENDIX B

# Vancouver Police Department

| | |
|---|---|
| 605 E. Evergreen<br>Vancouver, WA 98661 | (360) 487-7400<br>(360) 694-9646 (FAX) |

Case No.
**07-16197**

Report ID
**ORIGINAL**

RCN

## Incident Report

# Records Center

| | |
|---|---|
| 707 W 13TH Street<br>Vancouver, WA 98660 | (360) 397-2211<br>(360) 397-6074 (FAX) |

DOR
**08/10/2007**

Officer Assaulted ☐   Non Disclosure ☐

Distribution Other

Distribution
**NONE**

| Init | pDis | sDis | dEnt | M.C. | Cond | Case | FAU | Ret | Lett |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Status | IO ☐   IRO ☐   AO ☐   ARO ☐ | | | |

## Administrative Information

| Location | | | City | | State | Zip Code |
|---|---|---|---|---|---|---|

| Local Geo | State Geo | Precinct<br>**V EAST** | Geo | | | |
|---|---|---|---|---|---|---|

| Rep Date<br>08/09/2007 | Rep Time<br>21:16 | From Date<br>08/09/2007 | From Time<br>16:00 | To Date<br>08/09/2007 | To Time<br>21:16 | Category | Class | Premise<br>RE |
|---|---|---|---|---|---|---|---|---|

| Dom Viol ☐ | DV Card ☐ | Child Abuse ☐ | Arson ☐ | Homicide ☐ | Gang ☐ | Weapons ☐ | Alcohol ☐ | Drugs ☐ | Computer ☐ |
|---|---|---|---|---|---|---|---|---|---|

## Offense Information

| Off # | Offense | Offense Category | Offense Translation | Attempted or Completed |
|---|---|---|---|---|
| 2 | 9A.56.030 | THEFT | THEFT I - Other | C |

Location Type
**1STORY**

| Off # | Offense | Offense Category | Offense Translation | Attempted or Completed |
|---|---|---|---|---|
| 1 | 9A.52.025 | BURGLARY | Burglary - residential | C |

Location Type
**1STORY**

## Individual

| Role | Seq | Type | Last Name | First Name | Middle Name | Sex | Race |
|---|---|---|---|---|---|---|---|
| V | 1 | I | LAWER | DIANE | GAYE | F | W |

| Birthdate | | Eth | |
|---|---|---|---|

| Age Low | Age High | Hgt<br>54 | Wgt<br>450 | Hair<br>BLK | Eyes<br>HAZ | Residence<br>F | Employment/Occupation |
|---|---|---|---|---|---|---|---|

| Driver's License Number | Driver's License Issuer | Social Security No. | State ID No. | FBI No. | PCN |
|---|---|---|---|---|---|

| Custody Status | Gang Affiliation | Tribe Affiliation | Identifiers |
|---|---|---|---|

Comments

| Type<br>H | Location | City | State | Zip Code |
|---|---|---|---|---|

| Type<br>H | Phone No. | | | |
|---|---|---|---|---|

| Reporting Officer<br>Hammond, Scotland | PSN<br>1431 |
|---|---|
| Approving Officer<br>Thompson, Jon | PSN<br>1284 |

Ref Case Number

Report ID **ORIGINAL**

Report ID **07-16197**

Agency/Case Number **VPD**

27

5720

# Vancouver Police Department

Case No.
07-16197

## Article

| Item # | Loss/Action | IBR Type | NCIC Category | Type | Quantity | Caliber | Drug Type |
|---|---|---|---|---|---|---|---|
| 4 | STOLEN | OTHER | | | 1 | | |

| Drug Quantity | Drug Measure | Loss Value | Color | Color |
|---|---|---|---|---|
| | | 100 | | |

Description
ELECTRIC GUITAR

Brand

Model

Serial No.                               Owner Applied No. (OAN)

Miscellaneous

| Rec. Date | By PSN | Rec. Agcy | Rec. Value |
|---|---|---|---|
| | | | |

| Location | City | State | Zip Code |
|---|---|---|---|
| | | | |

## Narrative

**SUMMARY:**
Dispatched to a residential burglary at ▮▮▮▮▮▮▮▮▮▮▮▮. Victim stated some music instruments had been stolen. A Residential burglary and Theft I had occurred. Report taken. Case suspended due to lack of investigative leads.

**MENTIONED:**
Diane Lawer - victim

**ACTION TAKEN:**
On August 9, 2007 at 2131 hours I was dispatched to a residential burglary at ▮▮▮▮▮▮▮▮▮▮▮.

I arrived on scene and contacted a female (identified as Diane Lawer)

Diane stated sometime between 4:00 pm and 9:00 pm someone had entered her home and taken some musical instruments.

I asked if the house was locked and Diane said, "No". Diane stated she had left the front door unlocked when she left. I looked at the front door and saw no evidence of forced entry.

Diane stated nothing was out of place and nothing else was missing except for the instruments.

I asked Diane if she had been fighting or arguing with someone that could possibly be mad enough to come and take the instruments. Diane stated she had not been fighting with anyone. Diane said she did not know anyone that would have taken the instruments.

Diane gave me a list of the instruments:
2 Cellos = $5300
1 Violin = $650
2 Violas = $1500
1 Electric Guitar = $100

Diane stated she owned the instruments outright. I asked Diane if she had any serial numbers. Diane said she did not have any, but would call Beacock music store to see if they had the serial numbers on record as that is where she purchased the instruments.

| Reporting Officer | PSN |
|---|---|
| Hammond, Scotland | 1431 |
| Approving Officer | PSN |
| Thompson, Jon | 1284 |

Report printed by: 0127                              Page 3 of 4

5722

| Vancouver Police Department | Case No. 07-16197 |
|---|---|

**Narrative**

I looked in the front room area of where the instruments were kept and found nothing of evidentiary value.

I gave Diane the case number and told her to call if she had the serial numbers or any more information regarding the theft.

RECOMMENDED ACTIONS:
Case suspended due to lack of investigative leads.

I certify or declare under penalty of perjury under the law of the state of Washington, that to the best of my knowledge the attached report(s), documents, and information contained therein are true, correct, and accurate. (RCW 9A.72.085)

| Reporting Officer Hammond, Scotland | PSN 1431 |
| Approving Officer Thompson, Jon | PSN 1284 |

Report printed by: 0127                                    Page 4 of 4

5723

# Vancouver Police Department

Case No.
07-16197

## Article

| Item # | Loss/Action | IBR Type | NCIC Category | Type | Quantity | | Caliber | Drug Type |
|---|---|---|---|---|---|---|---|---|
| 2 | STOLEN | OTHER | | | 1 | | | |

| Drug Quantity | Drug Measure | Loss Value | Color | Color |
|---|---|---|---|---|
| | | | | |

Description
VIOLIN

Brand

Model

Serial No.
Z3771

Owner Applied No. (OAN)

Miscellaneous

| Rec. Date | By PSN | Rec. Agcy | Rec. Value |
|---|---|---|---|
| | | | |

| Location | | City | State | Zip Code |
|---|---|---|---|---|
| | | | | |

## Article

| Item # | Loss/Action | IBR Type | NCIC Category | Type | Quantity | | Caliber | Drug Type |
|---|---|---|---|---|---|---|---|---|
| 3 | STOLEN | OTHER | | | 2 | | | |

| Drug Quantity | Drug Measure | Loss Value | Color | Color |
|---|---|---|---|---|
| | | | | |

Description
VIOLA

Brand

Model

Serial No.
2571, M43025

Owner Applied No. (OAN)

Miscellaneous

| Rec. Date | By PSN | Rec. Agcy | Rec. Value |
|---|---|---|---|
| | | | |

| Location | | City | State | Zip Code |
|---|---|---|---|---|
| | | | | |

## Narrative

**ACTION TAKEN:**

On August 9, 2007 I was dispatched to a residential burglary at ███████ ███████████████. The victim (Diane Lawer) reported someone had taken several instruments from inside the house. Diane said she was going to try and find the serial numbers for the stolen instruments. I told Diane to call when she got the serial numbers so I could put them in the report.

On August 11, 2007 I received a voice message from Katherine Lawer (daughter of Diane) regarding the stolen instruments she reported on 8/09/07.

Katherine left a message giving me the serial numbers to the instruments.
Cello #1 - J3522
Cello #2 - L6425
Viola #1 - 2571
Viola #2 - M43025
Violin - Z3771

I called records and they stated they did not need a make and model number to enter stolen property into NCIC, just the serial number.

| Reporting Officer | PSN |
|---|---|
| Hammond, Scotland | 1431 |
| Approving Officer | PSN |
| Trumpf, Rodney | 1194 |

Agency/Case Number VPD
Report ID 07016197
08/12/2007
21:46 1431
Ref Case Number

Report printed by: 0127                                     Page 2 of 3

5725

# Vancouver Police Department

Case No.
07-16197

## Narrative

I am going to follow up and get the make and model numbers for the instruments for more identification purposes.

Case is active until I can do further follow-up my next work day.

RECOMMENDED ACTIONS:
Attach to Original report. Case active for further follow-up on my next work day.

I certify or declare under penalty of perjury under the law of the state of Washington, that to the best of my knowledge the attached report(s), documents, and information contained therein are true, correct, and accurate. (RCW 9A.72.085)

| Reporting Officer | PSN |
|---|---|
| Hammond, Scotland | 1431 |
| Approving Officer | PSN |
| Trumpf, Rodney | 1194 |

Report printed by: 0127                                      Page 3 of 3

Agency/Case Number VPD
07.016197
Received ID
08/12/2007
21:46
Ref Case Number 1431

5726

# Vancouver Police Department

| | |
|---|---|
| 605 E. Evergreen<br>Vancouver, WA 98661 | (360) 487-7400<br>(360) 694-9646 (FAX) |

## Supplemental Incident Report

# Records Center

| | |
|---|---|
| 707 W 13TH Street<br>Vancouver, WA 98660 | (360) 397-2211<br>(360) 397-6074 (FAX) |

| Case No. |
|---|
| 07-16197 |

| Report ID |
|---|
| 08/20/2007  22:57  1414 |

RCN

| DOR |
|---|
| 08/20/2007 |

| Officer Assaulted | Non Disclosure |
|---|---|
| ☐ | ☐ |

Distribution Other

Distribution
V DETECT

| Init | pDis | sDis | dEnt | M.C. | Concl | Case | F/U | Ret | Lett |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| | Status | | |
|---|---|---|---|
| | I☐   IR☐   A☐   AR☐ | | |

## Administrative Information

| Location | | | City | | State | Zip Code |
|---|---|---|---|---|---|---|
| | | | | | | |

| Local Geo | State Geo | Precinct<br>V WEST | Geo<br>V21 |
|---|---|---|---|

| Rep Date<br>08/18/2007 | Rep Time<br>16:40 | From Date<br>08/18/2007 | From Time<br>16:40 | To Date | To Time | Category | Class | Premise |
|---|---|---|---|---|---|---|---|---|

| Dom Viol | DV Card | Child Abuse | Arson | Homicide | Gang | Weapons | Alcohol | Drugs | Computer |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

## Offense Information

| Off #<br>1 | Offense<br>9A.52.025 | Offense Category<br>BURGLARY | Offense Translation<br>Burglary - residential | Attempted or Completed<br>C |
|---|---|---|---|---|

Location Type
1STORY

## Individual

| Role<br>I | Seq<br>1 | Type<br>I | Last Name<br>CASTELLANOS | First Name<br>LYNDA | Middle Name<br>D | Sex<br>F | Race<br>W |
|---|---|---|---|---|---|---|---|

| Birthdate | Eth |
|---|---|

| Age Low | Age High | Hgt<br>504 | Wgt<br>150 | Hair<br>BLN | Eyes<br>BRO | Residence<br>F | Employment/Occupation |
|---|---|---|---|---|---|---|---|

| Driver's License Number | Driver's License Issuer | Social Security No. | State ID No. | FBI No. | PCN |
|---|---|---|---|---|---|

| Custody Status | Gang Affiliation | Tribe Affiliation | Identifiers |
|---|---|---|---|

Comments

| Type<br>H | Location | City | State | Zip Code |
|---|---|---|---|---|

| Type<br>C | Phone No. |
|---|---|

## Individual

| Role<br>I | Seq<br>2 | Type<br>I | Last Name<br>KOSEK | First Name<br>ROBERT | Middle Name<br>E | Sex<br>M | Race<br>W |
|---|---|---|---|---|---|---|---|

| Birthdate<br>/  / | Eth |
|---|---|

| Age Low | Age High | Hgt<br>601 | Wgt<br>180 | Hair<br>BRO | Eyes<br>GRN | Residence<br>F | Employment/Occupation |
|---|---|---|---|---|---|---|---|

| Driver's License Number | Driver's License Issuer | Social Security No. | State ID No. | FBI No. | PCN |
|---|---|---|---|---|---|

| Custody Status | Gang Affiliation | Tribe Affiliation | Identifiers |
|---|---|---|---|

Comments

| Type<br>H | Location | City | State | Zip Code |
|---|---|---|---|---|

| Type<br>C | Phone No. |
|---|---|

| Reporting Officer<br>McCaleb, Eric | PSN<br>1414 |
|---|---|
| Approving Officer<br>Skarpho, Richard | PSN<br>1177 |

Agency/Case Number<br>VPD<br>07016197

Report ID<br>08/20/2007<br>22:57  1414

Ref Case Number

5727

# Vancouver Police Department

| | Case No. |
|---|---|
| | 07-16197 |

## Individual

| Role | Seq | Type | Last Name | First Name | Middle Name | Sex | Race |
|---|---|---|---|---|---|---|---|
| I | 3 | I | GOEBEL | BUDDY | L | M | W |

| Birthdate | | Eth | | | | | |
|---|---|---|---|---|---|---|---|

| Age Low | Age High | Hgt | Wgt | Hair | Eyes | Residence | Employment/Occupation |
|---|---|---|---|---|---|---|---|
| | | 508 | 200 | BRO | BLU | U | |

| Driver's License Number | Driver's License Issuer | Social Security No. | State ID No. | FBI No. | PCN |
|---|---|---|---|---|---|

| Custody Status | Gang Affiliation | Tribe Affiliation | Identifiers |
|---|---|---|---|

| Comments |
|---|

| Type | Phone No. |
|---|---|
| C | |

## Individual

| Role | Seq | Type | Last Name | First Name | Middle Name | Sex | Race |
|---|---|---|---|---|---|---|---|
| I | 4 | I | CASTELLANOS | RICCI | D | M | W |

| Birthdate | | Eth | | | | | |
|---|---|---|---|---|---|---|---|

| Age Low | Age High | Hgt | Wgt | Hair | Eyes | Residence | Employment/Occupation |
|---|---|---|---|---|---|---|---|
| | | 508 | 160 | BRO | BRO | F | |

| Driver's License Number | Driver's License Issuer | Social Security No. | State ID No. | FBI No. | PCN |
|---|---|---|---|---|---|

| Custody Status | Gang Affiliation | Tribe Affiliation | Identifiers |
|---|---|---|---|

| Comments |
|---|

| Type | Location | City | State | Zip Code |
|---|---|---|---|---|
| H | | | | |

| Type | Phone No. |
|---|---|
| C | |

## Article

| Item # | Loss/Action | IBR Type | NCIC Category | Type | Quantity | Caliber | Drug Type |
|---|---|---|---|---|---|---|---|
| 1 | RECOV.LOC | OTHER | | | | | |

| Drug Quantity | Drug Measure | Loss Value | Color | Color |
|---|---|---|---|---|

| Description |
|---|
| VIOLA |

| Brand |
|---|

| Model |
|---|

| Serial No. | Owner Applied No. (OAN) |
|---|---|
| 2571 | |

| Miscellaneous |
|---|

| Rec. Date | By PSN | Rec. Agcy | Rec. Value |
|---|---|---|---|
| 08/18/2007 | | | |

| Location | City | State | Zip Code |
|---|---|---|---|

## Narrative

SUMMARY:

I recovered a stolen viola and it was returned to the owner.

NARRATIVE:

On the above date and time I responded to the above address with Ofc. Lachapelle reference a subject trying to pawn a stolen cello.  Ofc. Lachapelle got information from the subject about where he got the cello and I went to

| Reporting Officer | PSN |
|---|---|
| McCaleb, Eric | 1414 |
| Approving Officer | PSN |
| Skarpho, Richard | 1177 |

Report printed by: 0127                                         Page 2 of 3

Agency/Case Number VPD 07-16197
Report ID 08/20/2007
Ref Case Number 22:57 1414

5728

| Vancouver Police Department | Case No. 07-16197 |
|---|---|

## Narrative

that address to follow up.  See Ofc. Lachapelle's report for further information.

The subject stated he got the cello from Lynda Castellanos and she lived at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.  I contacted Lynda at that address and asked if I could come inside to talk about the cello.  Lynda invited me into her apartment and I then asked her where the cello came from.  She said a friend of hers named Buddy had brought the cello over a few days earlier.  She said he left the cello in her apartment and told her that she could have it.  I asked Lynda if she had any other musical instruments inside her home and she said that she did not.  She said that she was going to by a violin from Ricci Castellanos, her ex brother-in-law, for $25.  She said that he stays in either apartment ▮▮▮▮, but is not there now.  She said Robert Kosek lives in apartment ▮ and that is where Ricci had left the violin.

Lynda said she only knows Buddy by his first named and described him as a white male in his late 30's, with a bald head.  She said he used to live on ▮▮▮▮▮▮ directly behind the check cashing store that is on the corner of ▮▮▮▮▮▮▮▮▮▮.

I contacted Robert in apartment ▮ and asked if I could come inside and talk to him about the violin.  Robert invited me into his apartment and I asked him if he had a violin.  He stated that his friend Ricci had left one in his apartment and that Ricci was selling it to Lynda for $25.  I asked Robert where the violin was and he said that it was in hall closet.  I asked Robert if I could get it out of the closet and he said yes.  Inside the closet I found a case containing what I thought was a violin.  Robert stated that he did not want the violin in his house because it did not belong to him.  I took the violin for safekeeping.  I asked Robert if he knew where the instrument had come from and he stated that all he knew was Ricci had brought it over and was going to sell it to Lynda.  Robert said Ricci had left before we arrived and did not know when he would be returning.

I checked the EPR report with the information about the stolen instruments.  I determined the instrument to be a viola and that it was stolen in the original burglary.  I confirmed this by matching the serial number on the viola to that of one stolen in the burglary.  I contacted the owner of the viola and it was released back to her.

I went to the address that Lynda had described and determined it to be ▮▮▮▮▮▮▮▮▮.  I contacted the residents at that address who said that Buddy used to live there, but had moved out over a month ago.  They were not able to provide me with Buddy's last name or current address.  They did state that he drove a blue Nissan Pulsar.

I ran the name Buddy in EPR and began checking every entry.  I found an entry for a subject named Buddy Goebel.  Buddy listed ▮▮▮▮▮▮▮▮▮ as his address and was reported as driving a blue Nissan Pulsar bearing 342LYZ/WA.  There was no current information on Buddy's location.

ACTIONS RECOMMENDED:

Forward to Detectives for further follow up.

I certify or declare under penalty of perjury under the law of the state of Washington, that to the best of my knowledge the attached report(s), documents, and information contained therein are true, correct, and accurate.  (RCW 9A.72.085)

| Reporting Officer | PSN |
|---|---|
| McCaleb, Eric | 1414 |
| Approving Officer | PSN |
| Skarpho, Richard | 1177 |

Report printed by: 0127                                    Page 3 of 3

Agency/Case Number VPD 07-016197
Report Date 08/20/2007 22:57
Rel Case Number 1414

5729

# Vancouver Police Department

| | |
|---|---|
| Case No. | 07-16197 |

605 E. Evergreen
Vancouver, WA 98661

(360) 487-7400
(360) 694-9646 (FAX)

Report ID  08/21/2007 23:45 1410

RCN

## Supplemental Incident Report

# Records Center

DOR  08/21/2007

707 W 13TH Street
Vancouver, WA 98660

(360) 397-2211
(360) 397-6074 (FAX)

Officer Assaulted ☐     Non Disclosure ☐

| Distribution | Distribution Other |
|---|---|
| V DETECT | DET KNOEPPEL |

| Init | pDis | sDis | dEnt | M.C. | Concl | Case | F/U | Ret | Left |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

Status     I☐   IR☐   A☐   AR☐

## Administrative Information

| Location | | City | | State | Zip Code |
|---|---|---|---|---|---|

| Local Geo | State Geo | Precinct  V WEST | Geo  V21 |
|---|---|---|---|

| Rep Date  08/18/2007 | Rep Time  16:40 | From Date  08/18/2007 | From Time  16:40 | To Date | To Time | Category | Class | Premise |
|---|---|---|---|---|---|---|---|---|

| Dom Viol ☐ | DV Card ☐ | Child Abuse ☐ | Arson ☐ | Homicide ☐ | Gang ☐ | Weapons ☐ | Alcohol ☐ | Drugs ☐ | Computer ☐ |
|---|---|---|---|---|---|---|---|---|---|

## Offense Information

| Off # | Offense | Offense Category | Offense Translation | Attempted or Completed |
|---|---|---|---|---|
| 1 | 9A.52.025 | BURGLARY | Burglary - residential | C |

Location Type
1STORY

## Individual

| Role | Seq | Type | Last Name | First Name | Middle Name | Sex | Race |
|---|---|---|---|---|---|---|---|
| I | 1 | I | WILSON | MARK | JAMES | M | W |

| Birthdate | Eth |
|---|---|

| Age Low | Age High | Hgt | Wgt | Hair | Eyes | Residence  F | Employment/Occupation |
|---|---|---|---|---|---|---|---|

| Driver's License Number | Driver's License Issuer | Social Security No. | State ID No. | FBI No. | PCN |
|---|---|---|---|---|---|

| Custody Status | Gang Affiliation | Tribe Affiliation | Identifiers |
|---|---|---|---|

Comments

| Type  C | Phone No. |
|---|---|

## Individual

| Role | Seq | Type | Last Name | First Name | Middle Name | Sex | Race |
|---|---|---|---|---|---|---|---|
| S | 1 | I | GOEBEL | BUDDY | LESTER | M | W |

| Birthdate | Eth |
|---|---|

| Age Low | Age High | Hgt  508 | Wgt  170 | Hair | Eyes | Residence  F | Employment/Occupation |
|---|---|---|---|---|---|---|---|

| Driver's License Number | Driver's License Issuer | Social Security No. | State ID No. | FBI No. | PCN |
|---|---|---|---|---|---|

| Custody Status | Gang Affiliation | Tribe Affiliation | Identifiers |
|---|---|---|---|

Comments

## Narrative

SUPPLEMENTAL REPORT:

On 08/18/07 at approximately 1640hrs. I, Ofc. Lachapelle, along with Ofc. McCaleb was dispatched to

| Reporting Officer  Aldridge, Amy | PSN  1410 |
|---|---|
| Approving Officer  Skarpho, Richard | PSN  1177 |

Report printed by: 0127

Page 1 of 2

5730

| Vancouver Police Department | Case No. 07-16197 |
| --- | --- |

**Narrative**

Purple Monkey Music, in reference to a male actively attempting to pawn a stolen cello.

Upon my arrival, I noticed a male matching the physical description given standing in the door way of the business. I approached him and he identified himself as Mark Wilson. Mark stated that he brought the cello to the store the day before hoping to pawn it. I asked Mark where he got the cello from. He stated that he got it at Linda Costellano's house, ███████████████████. Mark stated that Linda told him that the cello was given to her by Buddy.

Mark stated that Linda did not have any money so he offered to pawn the cello for her. Mark stated he was just trying to help Linda out. Mark agreed that he should have known the cello was stolen because he said Buddy breaks into houses often. He also said that he originally attempted to pawn the cello at a shop downtown but they would not take it because the suspected it as stolen.

Mark stated that he particularly suspected the cello of being stolen property after he had already taken it to the pawn shop and Linda told Buddy it was there. He stated that Buddy became very angry about it because he knew the could track pawned property.

Mark stated that he did not know Buddy's full name but believed he lived on ████████. Mark stated that he would contact me if he was able to find out Buddy's full name. Mark was released at the scene after Ofc. McCaleb arrived at Linda's house. I was notified by the pawn shop that the police had seized the cello the day before.

Ofc. McCaleb informed me that he spoke with Linda and that he recovered another stolen viola. SEE ATTACHED SUPPLEMENT OF OFC. MCCALEB

Ofc. McCaleb and I went to ███████████, the address also described to him from Linda, as Buddy's current residence. The occupants of the residence were cooperative and stated that Buddy had not stayed there for about a month. They also did not know Buddy's full name.

Mark contacted me at approximately 2130hrs. and stated that Buddy's full name was Buddy Lester Goebel.

RECOMMENDATION:

This report should be attached to the original and sent to Det. Knoeppel for additional investigation.

I certify or declare under penalty of perjury under the law of the state of Washington, that to the best of my knowledge the attached report(s), documents, and information contained therein are true, correct, and accurate. (RCW 9A.72.085)

| Reporting Officer | PSN |
| --- | --- |
| Aldridge, Amy | 1410 |

| Approving Officer | PSN |
| --- | --- |
| Skarpho, Richard | 1177 |

Agency/Case Number VPD 07016197
Report ID 07016197
Date 08/21/2007
Time 23:45
Ref Case Number 1410

5731

# Vancouver Police Department

Case No.
07-16197

## Evidence

| Item # 1307-001 | Loss/Action EVIDENCE | IBR Type OTHER | Description PHOTOS ON DISK | |
|---|---|---|---|---|
| Loss Value 2500 | Amount 1 | Caliber | Drug Type | Drug Quantity | Drug Measure |

| Brand |
|---|
| Model |
| Serial No. | Owner Applied No. (OAN) |
| Miscellaneous |

| Rec. Date 08/29/200 7 | By PSN 1307 | Rec. Agcy VPD | Rec. Value |
|---|---|---|---|

| Location | City | State | Zip Code |
|---|---|---|---|

Officer Notes
photos of cello retained as evidence

## Narrative

SUMMARY:

Diane Lawer's stolen cello was recovered from Anson Service, the owner of Purple Monkey Music.

NARRATIVE:

On 8/17/07, at about 1830 hours, I received a phone call from Anson Service, the owner of Purple Monkey Music located at ▮▮▮▮▮▮▮▮
Anson told me that a male attempted to sell him an expensive cello for a very cheap price, and Anson suspected it was stolen. Anson provided me with the description of the cello including the serial number, and I confirmed the instrument was stolen.

Anson told me the following:

A white male walked into his music store carrying a cello. The cello was not in a case (I previously spoke with Diane about this burglary and she mentioned that the cases for the instruments were not stolen). The male wanted to sell the cello to Anson for about $50.00.

Anson knew the cello was worth significantly more than that, and assumed it was stolen. He kept the cello and told the male to come back later and he would see what he could do. Anson said he almost had the male's I.D., but the male left the store. He described him as a white male in his late 30's.

I gave Anson the case number and told him to call 911 if the male returned for the cello. Anson came to my office and turned the cello over to me. I contacted Diane Lawer to advise her that I recovered the cello. I described the male that attempted to pawn it and she said the male did not seem familiar.

On 8/21/07, I learned that patrol had responded to Purple Monkey Music on 8/18/07, when the male (later identified as Mark James Wilson) returned for the cello. Per investigation conducted by Officer Amy LaChapelle and Officer Eric McCaleb, Mark admitted to pawning the items however said he obtained them from somebody else. Their investigation led to the recovery of Diane's viola.

I asked Diane if she knew any of the people mentioned in the reports. Diane did not know any of the people I mentioned.

| Reporting Officer Knoeppel, Barbara | PSN 1307 |
|---|---|
| Approving Officer Ryan, Tom | PSN 1113 |

Report printed by: 0127

Page 2 of 3

5733

| Vancouver Police Department | Case No.<br>07-16197 |
| --- | --- |

**Narrative**

I contacted records and had both instruments removed from NCIC.  I returned the cello to Diane's husband, Bill Lawer, on 8/29/07 and retained photos of it as evidence.

RECOMMENDED ACTION:

Active; pending contact with Ricci Castellanos and Buddy Goebel.

I certify or declare under penalty of perjury under the law of the state of Washington, that to the best of my knowledge the attached report(s), documents, and information contained therein are true, correct, and accurate.  (RCW 9A.72.085)

| Reporting Officer | PSN |
| --- | --- |
| Knoeppel, Barbara | 1307 |
| Approving Officer | PSN |
| Ryan, Tom | 1113 |

Report printed by: 0127

Page 3 of 3

Ref Case Number

14:49

08/29/2007 Report ID

07016197 Agency/Case Number
VPD

5734

# Vancouver Police Department

| | | |
|---|---|---|
| 605 E. Evergreen<br>Vancouver, WA 98661 | (360) 487-7400<br>(360) 694-9646 (FAX) | Case No.<br>07-16197 |
| | | Report ID<br>07/03/2008 13:20 1307 |

## Supplemental Incident Report

RCN

# Records Center

| | | |
|---|---|---|
| | | DOR<br>07/03/2008 |
| 707 W 13TH Street<br>Vancouver, WA 98660 | (360) 397-2211<br>(360) 397-6074 (FAX) | Officer Assaulted ☐    Non Disclosure ☐ |

Distribution
NONE

Distribution Other

| Init | pDis | sDis | dEnt | M.C. | Cond | Case | F/U | Rel | Left |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Status | | | | |

IO ☐   IRO ☐   AO ☐   ARO ☐

## Administrative Information

| Location | City | State | Zip Code |
|---|---|---|---|
| | | | |

| Local Geo | State Geo | Precinct<br>V DET | Geo |
|---|---|---|---|

| Rep Date<br>08/09/2007 | Rep Time | From Date | From Time | To Date | To Time | Category | Class | Premise |
|---|---|---|---|---|---|---|---|---|

| Dom Viol ☐ | DV Card ☐ | Child Abuse ☐ | Arson ☐ | Homicide ☐ | Gang ☐ | Weapons ☐ | Alcohol ☐ | Drugs ☐ | Computer ☐ |
|---|---|---|---|---|---|---|---|---|---|

## Article

| Item #<br>1 | Loss/Action<br>RECOV.LOC | IBR Type<br>OTHER | NCIC Category | Type | Quantity<br>1 | Caliber | Drug Type |
|---|---|---|---|---|---|---|---|

| Drug Quantity | Drug Measure | Loss Value | Color | Color |
|---|---|---|---|---|

Description
LEON AUBERT VIOLA

Brand

Model

| Serial No.<br>M43025 | Owner Applied No. (OAN) |
|---|---|

Miscellaneous
VIOLA, CASE, AND BOW

| Rec. Date<br>07/03/2008 | By PSN<br>1307 | Rec. Agcy<br>VPD | Rec. Value |
|---|---|---|---|

| Location | City | State | Zip Code |
|---|---|---|---|

## Narrative

ATTACHMENTS:

Copy of Pawn Hold
Copy of Stolen Hit
Copy of Certified Letter to Diane Lawer


SUMMARY:

A stolen Viola was located at Briz Loans.  Five musical instruments were stolen in this residential burglary.  The viola is the 3rd instrument to surface.  The pawner, Jan Edwards is a transient female.

NARRATIVE:

On July 1st, Tom Beene notified me of a stolen hit on a viola at Briz Loans.  I called Briz Loans and placed a

| Reporting Officer<br>Knoeppel, Barbara | PSN<br>1307 |
|---|---|
| Approving Officer<br>Ryan, Tom | PSN<br>1113 |

Report printed by: 0127                                    Page 1 of 2

| Vancouver Police Department | Case No. 07-16197 |
|---|---|

**Narrative**

verbal hold on the viola.

On July 3rd, I contacted Scott Ulrich at Briz Loans. Scott said he did not recall the specific transaction, which occurred in March of 2008. He said he was not familiar with Jan Edwards (pawner) and would not be able to identify her.

I examined the viola and confirmed the serial number was M43025. The viola had been pawned along with the case and bow. I placed a written hold on the viola and had Scott sign the hold.

I advised Scott that the victim had 5 instruments stolen in a residential burglary and that 3 had surfaced thus far. I advised Scott that the victim, Diane Lawer, would likely want to arrange for the return of her property however I still had to notify her of its recovery.

I contacted records and had the viola removed from NCIC.

I checked EPR and Prime and was unable to find any address or phone numbers for Jan Edwards. There is no suspect in the original burglary, although Buddy Goebel was a person of interest. The other instruments that surfaced were allegedly given to the possessors by Buddy.

I have been unable to contact Diane Lawer. I sent Diane a letter via certified mail. I notified Diane that I located her property, placed it on a 120 day hold, and requested she contact me.


RECOMMENDED ACTION:

Suspended pending contact with victim.

I certify or declare under penalty of perjury under the law of the state of Washington, that to the best of my knowledge the attached report(s), documents, and information contained therein are true, correct, and accurate. (RCW 9A.72.085)

| Reporting Officer Knoeppel, Barbara | PSN 1307 |
|---|---|
| Approving Officer Ryan, Tom | PSN 1113 |

Report printed by: 0127        Page 2 of 2

Ref Case Number   13:20   07/03/2008   Report ID   07 016197   Agency/Case Number   VPD
1307

5736

**Watson, Peggy**

| | |
|---|---|
| From: | O'Mara, John |
| Sent: | Friday, August 31, 2007 5:47 PM |
| To: | Earl, Stephanie |
| Subject: | RE: Pretrial Interview re: Dino Constance |

0930hrs sounds great. Thanks. Regarding Ricci the "semi-hero", I read about it in the Columbian, yesterday's paper. It was on the front page. Hopefully that will help offset his recent cases where he was arrested on a warrant, and is a suspect in a hit and run and residential burglary. Hhhhmmmmm. Should be interesting. Someone should have warned you that I'm the shi# magnet for the County. I'm not kidding either. This was determined by those that would know better than anyone else...the dispatchers for both County and City. Apparently Jeff Wilken (I think that's his name) is the shi# magnet for the City (VPD) and I'm it for the County...and I apparently am "Tops" for both. If you don't believe me, go on a ride-along with me some time when I'm working overtime in patrol and you'll witness it first hand. No matter what kind of call I get, I either turn it into something "more" (which I always thought was a good thing), or it becomes it's own beast. Anyway, all of that was said so you are forewarned of all the things that could happen with this case, Ricci being the first fine example of that (and the fact that it's MY case). In addition to that, we have a bonus added in the form of Dino Constance, so this will only get worse before it gets better. But hey, at least I keep life "interesting". Yeah, that's the word I'll use...interesting.

Anyway, don't fret about Ricci. I will get in contact with him, if I have to go harass him in his "hood", and make sure he not only contacts you, but if you let me know the date and time he's assigned, I'll try to see to it personally that he shows up...on time.

Hope you have a great Holiday Weekend...which I realize you have probably already started. I'll be "suffering" on Monday, the actual holiday, working overtime at $79.50 per hour. That's ok though, we all have our crosses to bear. See you soon.

*John O'Mara*
Detective
Major Crimes Unit
(360)397-2028
john.o'mara@clark.wa.gov

*****CONFIDENTIALITY NOTICE*****

This e-mail may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this e-mail in error, please advise me immediately by reply e-mail, keep the contents confidential, and immediately delete the message and any attachments from your system.

*******************************************

| | |
|---|---|
| From: | Earl, Stephanie |
| Sent: | Friday, August 31, 2007 1:49 PM |
| To: | O'Mara, John |
| Subject: | RE: Pretrial Interview re: Dino Constance |

You crack me up! Sorry - I went to lunch. Would you like to meet with Tony at 9:30 am or 9:45 am that day? That way you and Tony can meet before defense shows up. Also, it will be in our office.

| | |
|---|---|
| From: | O'Mara, John |
| Sent: | Friday, August 31, 2007 12:54 PM |
| To: | Earl, Stephanie |
| Subject: | RE: Pretrial Interview re: Dino Constance |

Ok, I just left you a "goofy" message, since you ignored my phone call, even though you "JUST" emailed me. Yes, the 12th looks good. I have two questions:

1

on, Peggy

| | |
|---|---|
| om: | O'Mara, John |
| ent: | Friday, August 24, 2007 3:05 PM |
| To: | Earl, Stephenie |
| Cc: | Golik, Tony |
| Subject: | RE: Pretrial Interview re: Dino Constance |

Well, I thought you both might want to know that it "may" be easier to keep in touch with Ricci than one would have originally thought. As luck would have it, bad luck, he is presently in the Clark County jail with no "out date" listed. He was apparently arrested on a warrant for FTC or FTA, I can't remember which one. He is also the newest suspect in a Residential Burglary and a Hit and Run/Motor Vehicle. Life just stays interesting, doesn't it?

*John O'Mara*

Detective
Major Crimes Unit
(360)397-2028
john.o'mara@clark.wa.gov

*****CONFIDENTIALITY NOTICE*****

This e-mail may contain information that is privileged, confidential, or otherwise exempt from disclosure under applicable law. If you are not the addressee or it appears from the context or otherwise that you have received this e-mail in error, please advise me immediately by reply e-mail, keep the contents confidential, and immediately delete the message and any attachments from your system.

*********************************************

| | |
|---|---|
| From: | Earl, Stephenie |
| Sent: | Friday, August 24, 2007 10:39 AM |
| To: | O'Mara, John |
| Subject: | RE: Pretrial Interview re: Dino Constance |

We just received a citation from the court for an attorney review for next Thursday. Apparently, Dino wants a new attorney . . . Again. I'll probably wait to schedule your interview until we find out what is going on.

| | |
|---|---|
| From: | O'Mara, John |
| Sent: | Friday, August 24, 2007 8:19 AM |
| To: | Earl, Stephenie |
| Subject: | RE: Pretrial Interview re: Dino Constance |

Story of my life. I will be out of town in Burien from 9-4 until either very late on 9-6 or some time in the afternoon on 9-7. I will be the Presiding Member for a Decertification Hearing with the Training Commission and therefore Must attend. Is there any chance it can be put out further? I have the following dates available, if that helps:

09/12 - am only.  09/13 - am only. 09/14 - all day. 09/18 - all day. 09/20 - am only. 09/26 - all day. 09/27 - am only. 09/28 - all day.

Hopefully one of those will work. Sorry for any trouble this may cause, but as you can see by the many "skipped" days, I have a full plate for September, and it gets progressively worse in October and November. Thanks.

*John O'Mara*

Detective
Major Crimes Unit
(360)397-2028
john.o'mara@clark.wa.gov

1

APPENDIX C

**FILED**

FEB 28 2008
1:05 pm
Sherry W. Parker, Clerk, Clark Co:

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR THE COUNTY OF CLARK

| | |
|---|---|
| STATE OF WASHINGTON, | No. 07-1-00843-8 |
| Plaintiff, | |
| v. | |
| DINO J. CONSTANCE, | |
| Defendant. | |

## COURT'S INSTRUCTIONS TO THE JURY

_____
SUPERIOR COURT JUDGE

_February 28, 2008_
DATE

110

INSTRUCTION NO. ___/___

It is your duty to decide the facts in this case based upon the evidence presented to you during this trial. It also is your duty to accept the law from my instructions, regardless of what you personally believe the law is or what you personally think it should be. You must apply the law from my instructions to the facts that you decide have been proved, and in this way decide the case.

Keep in mind that a charge is only an accusation. The filing of a charge is not evidence that the charge is true. Your decisions as jurors must be made solely upon the evidence presented during these proceedings.

The evidence that you are to consider during your deliberations consists of the testimony that you have heard from witnesses, stipulations, and the exhibits that I have admitted, during the trial. If evidence was not admitted or was stricken from the record, then you are not to consider it in reaching your verdict.

Exhibits may have been marked by the court clerk and given a number, but they do not go with you to the jury room during your deliberations unless they have been admitted into evidence. The exhibits that have been admitted will be available to you in the jury room.

One of my duties has been to rule on the admissibility of evidence. Do not be concerned during your deliberations about the reasons for my rulings on the evidence. If I have ruled that any evidence is inadmissible, or if I have asked you to disregard any evidence, then you must not discuss that evidence during your deliberations or consider it in reaching your verdict.

In order to decide whether any proposition has been proved, you must consider all of the evidence that I have admitted that relates to the proposition. Each party is entitled to the benefit of all of the evidence, whether or not that party introduced it.

You are the sole judges of the credibility of each witness. You are also the sole judges of the value or weight to be given to the testimony of each witness. In considering a witness's testimony, you may consider these things: the opportunity of the witness to observe or know the things he or she testifies about; the ability of the witness to observe accurately; the quality of a witness's memory while testifying; the manner of the witness while testifying; any personal interest that the witness might have in the outcome or the issues; any bias or prejudice that the witness may have shown; the reasonableness of the witness's statements in the context of all of the other evidence; and any other factors that affect your evaluation or belief of a witness or your evaluation of his or her testimony.

The lawyers' remarks, statements, and arguments are intended to help you understand the evidence and apply the law. It is important, however, for you to remember that the lawyers' statements are not evidence. The evidence is the testimony and the exhibits. The law is contained in my instructions to you. You must disregard any remark, statement, or argument that is not supported by the evidence or the law in my instructions.

You may have heard objections made by the lawyers during trial. Each party has the right to object to questions asked by another lawyer, and may have

a duty to do so. These objections should not influence you. Do not make any assumptions or draw any conclusions based on a lawyer's objections.

Our state constitution prohibits a trial judge from making a comment on the evidence. It would be improper for me to express, by words or conduct, my personal opinion about the value of testimony or other evidence. I have not intentionally done this. If it appeared to you that I have indicated my personal opinion in any way, either during trial or in giving these instructions, you must disregard this entirely.

You have nothing whatever to do with any punishment that may be imposed in case of a violation of the law. You may not consider the fact that punishment may follow conviction except insofar as it may tend to make you careful.

The order of these instructions has no significance as to their relative importance. They are all important. In closing arguments, the lawyers may properly discuss specific instructions. During your deliberations, you must consider the instructions as a whole.

As jurors, you are officers of this court. You must not let your emotions overcome your rational thought process. You must reach your decision based on the facts proved to you and on the law given to you, not on sympathy, prejudice, or personal preference. To assure that all parties receive a fair trial, you must act impartially with an earnest desire to reach a proper verdict.

INSTRUCTION NO. __3__

A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

176

INSTRUCTION NO. _____9_____

To convict the defendant of the crime of criminal solicitation as charged in Count 1, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or between January 15, 2007 and April 10, 2007, the defendant offered to give money or other thing of value to Michael Spry to engage in specific conduct;

(2) That such giving or offering was done with the intent to promote or facilitate the commission of the crime of Murder in the First Degree;

(3) That the specific conduct of the other person would constitute the crime of Murder in the First Degree or would establish complicity of the other person in the commission or attempted commission of the crime of Murder in the First Degree if such crime had been attempted or committed; and

(4) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

INSTRUCTION NO. _____10_____

To convict the defendant of the crime of criminal solicitation as charged in Count 2, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or between January 15, 2007 and April 10, 2007, the defendant offered to give money or other thing of value to Jordan Spry to engage in specific conduct;

(2) That such giving or offering was done with the intent to promote or facilitate the commission of the crime of Murder in the First Degree;

(3) That the specific conduct of the other person would constitute the crime of Murder in the First Degree or would establish complicity of the other person in the commission or attempted commission of the crime of Murder in the First Degree if such crime had been attempted or committed; and

(4) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

INSTRUCTION NO. _____11_____

To convict the defendant of the crime of criminal solicitation as charged in Count 3, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That on or between April 13, 2007 and May 7, 2007, the defendant offered to give money or other thing of value to Ricci Castellanos to engage in specific conduct;

(2) That such giving or offering was done with the intent to promote or facilitate the commission of the crime of Murder in the First Degree;

(3) That the specific conduct of the other person would constitute the crime of Murder in the First Degree or would establish complicity of the other person in the commission or attempted commission of the crime of Murder in the First Degree if such crime had been attempted or committed; and

(4) That the acts occurred in the State of Washington.

If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all the evidence you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.